| Wall & Company vs. Imperial Printing & Finishing Co. | No. 79934. |

July 30, 1932.

BAKER, P. J. Heard without the intervention of a jury.

This is a case in assumpsit in which the declaration sets out a book account and the common counts. The defendant filed pleas of the general issue and by way of counter claim.

The evidence shows that during the years 1926 and 1927 the plaintiff did accounting work for the defendant. About the middle of January, 1928, a Mr. Joslin, who had been the active manager of the defendant company, suddenly resigned. The defendant company was at that time owned very largely by a Mrs. Priest, a widow, who had not had any experience in the business. It was a large corporation engaged in printing and finishing goods.

Following the resignation of Mr. Joslin, a long conference was held by Mrs. Priest, members of her family and others interested, with Mr. Wall in regard to his working for the defendant. Other conferences followed and on February 7, 1928, a written contract was entered into between the parties herein. It is unnecessary to set out here in full the terms of this agreement, but, under it, the plaintiff, Mr. Wall, was to do certain accounting work and also other work for the defendant in the nature

of management of the business and industrial engineering. This agreement was to cover work for the calendar year 1928. As consideration, Mr. Wall was to receive the sum of $500 each month during that year and, in addition, if there should be furnished by him alone or in combination with assistants an amount of time in excess of 500 hours per year of the time of Mr. Wall personally or $1,000 per year of the time of his assistants, then the pay for such additional time was to be calculated at an hourly rate proportionate to the rate fixed for the retainer. Under this arrangement Mr. Wall did work for the defendant during the year 1928, and some time was expended by him and his staff for the defendant between the dates of January 1 and February 8, 1929, at which date all relationship between the parties ceased.

During the period involved, the plaintiff was paid his $6,000 in monthly installments of $500. In this action he is now asking for an added sum of something over $9,000, in order to cover what he claims was additional work done by him and his office staff in excess of the amount named in the contract and which he has already received.

The defendant, on the other hand, urges very strongly that the plaintiff's work was not satisfactory; that, as a matter of fact, he did not perform the contract in question fully and that the payment of $6,000 to him already made more than compensated him for what he did and that, therefore, it owes him nothing.

The defendant first contends that the plaintiff is not entitled to recover in this action, the declaration being merely on the common counts and there being no special count on the contract, without showing that he has substantially performed or executed the contract and that nothing remains but payment of the consideration, and it claims that the evidence does not support such a finding.

*McDermott* vs. *Aid Society*, 24 R. I. 527;

*Freese* vs. *Pavloski*, 39 R. I. 514.

The plaintiff takes issue with the defendant in this connection. The latter urges that the plaintiff has failed to perform his contract because he neglected to give any substantial amount of accounting services for January and February, 1928; that there was great delay in furnishing monthly statements, with the result that they were practically worthless; that he refused at times to give the defendant accounting services; that none were furnished for the month of December, 1928, and that the accounting information to the banks was not satisfactory.

In connection with the first complaint, it should be noted that the contract under which the plaintiff worked for the defendant was not entered into until February 7, 1928. At that time matters of management and general financial advice were urgent and pressing and the Court does not feel that the fact that not much accounting service was furnished in January and February is sufficient to prevent the plaintiff from recovering.

In regard to the refusal in certain instances to give the defendant accounting services, the Court is inclined to think that in this the plaintiff was justified. He had other clients besides the defendant. Mrs. Priest and her family were obviously nervous and upset at having large business interests thrust upon them without warning and previous experience, and unquestionably made great and at times unreasonable demands upon the plaintiff. Under the terms of the contract, the plaintiff was to devote such time as seemed to him reasonable and necessary for the defendant's business. In view of this situation, the Court is of

the opinion that the defendant cannot now urge the matter of refusal to furnish accounting services.

As to the failure to furnish the monthly statement for December, 1928, the Court believes this is largely due to lack of time and to the fact that the parties terminated their relationship early in 1929.

In connection with information to the banks, the evidence tends to disclose that some of this information was purposely withheld and with the defendant's knowledge, in order to give plaintiff and the officers of the corporation time to get matters straightened out. It is true that a loan at one bank was called early in 1928, but another loan was procured at another banking institution, and an official from the latter bank testified that the delay in furnishing the statements to it did not unduly prejudice the defendant.

There remains the matter of the delay in furnishing the monthly statements. In this connection the evidence does show that the plaintiff and his staff did not get out the monthly statements promptly. For example, the statement for December, 1927, was not gotten out until May, 1928, January, February, March and April statements for 1928 were not produced until the latter part of June, 1928. The statements for May and June were turned in a little more promptly but the statements for the following months were again considerably delayed. Obviously, a monthly statement in order to be a helpful picture of the corporation's business should be rendered with reasonable promptness to be of value in guiding the management.

The plaintiff contends that he was in close touch with the officers of the corporation at all times during the year 1928; that he had frequent conferences and consultations with them about the corporate business; that he did much work in connection with the management of the corporation; that most of the figures involved were on the corporation books in its office and that the delay in getting out written monthly statements did not cause any injury to the defendant.

After carefully going over the evidence, the Court is inclined to believe that there is merit in the plaintiff's contention. He was in close touch at all times with the defendant's officers and undoubtedly both he and they knew the details of the business. The Court is led to the conclusion that while the actual written monthly reports were delayed, the consultations and personal handling of the defendant's business by the plaintiff did constitute a substantial compliance with the contract under which the plaintiff was working. The general result and effect were the same.

An examination of the contract involved herein shows clearly that the plaintiff was expected to do more than mere accounting. Appraisals and valuations were taken up by him. At one period of the year the sale of the plant was being considered, and at all times he apparently gave financial advice and some attention to the management.

The Court has come to the conclusion, therefore, that the plaintiff has so substantially performed or executed the contract under which he was working for defendant that he is entitled under the law to bring his action on the common counts.

The next point raised by the parties relates to the meaning of the word "assistants" as used in the contract. On the plaintiff's staff were two accountants and two young women. The defendant does not question the application of the word "assistants" to the two accountants; it does as far as the young women are concerned. The plaintiff, on the other hand, contends that the word "assistants" should be construed in its broadest sense and

that the young women in question are included within its scope.

The matter is of importance because, under the contract, during 1928 the time of the assistants was figured at $6 per hour and the plaintiff has so figured the time of the young women in his office in computing the excess in the contract.

After giving this matter careful thought, the Court believes that the young women should not be considered as "assistants" within the meaning of that word as used in the contract and that, therefore, the time expended by them should not be charged. While the word "assistants" in and of itself is reasonably clear, the Court feels that as used in the contract it is somewhat ambiguous and in need of explanation and construction. In reaching this conclusion, the Court is not so much influenced by the evidence of the witness Marcus as by what seems to it to be the more natural and reasonable construction of the word in question. In this connection it may be noted that the plaintiff on his own cost sheets (Ex. A) places Mrs. King and Miss Bottomley under the heading "stenographers" and not under that "accountants."

It seems to the Court clear that in using the word "assistants," the parties had in mind accounting assistants and not anyone who might at some time do more or less clerical work under the contract. This is particularly true in view of the amount allowed per hour. The evidence shows clearly that Mrs. King did largely copying or stenographic work. It is true that undoubtedly Miss Bottomley did certain checking and mathematical computation and proof-reading, but the Court does not feel that on the evidence she can fairly be called a junior accountant. She only came into Mr. Wall's office in October, 1927, a few months before the contract in question went into effect. It seems to the Court more

reasonable to say that undoubtedly the time of these young women is included in the charge made by Mr. Wall and the accountants by way of overhead.

The question is raised as to how the work done in the year 1929 should be charged. The plaintiff argues that a new oral contract was made between the parties the latter part of December, 1928. The Court does not find this to be the fact. It cannot be disputed that the parties were negotiating and talking about a contract. The fact that the defendant's attorney was out of the city may have delayed the consideration of this matter. Unquestionably a form of renewal was left with the defendant by the plaintiff (See Ex. 11), and Exhibits 3, 4, 5, 6 and 7, which are letters which passed between the parties, indicate that the matter was under consideration, but the Court is of the opinion that nothing definite was done and that only the stage of negotiating had been reached. The plaintiff's own letter (Ex. 5) seems to show clearly that the old contract had not been renewed and that no new contract had been made.

The plaintiff then urges that the letter of January 12, 1929, (Ex. 5) fixes the rate for services. To a certain extent this is true, but an examination of the services rendered in January and February, 1929, seems to the Court to show clearly that practically all of them were services involved under the 1928 contract. The Court is of the opinion that this being the case it is only fair to make the charges for this work under the contract price.

The defendant next contends that the plaintiff and his employees have overcharged by figuring too much time against the defendant. In this connection some difficulty seems to be raised as to whether Exhibit 10 was merely admitted de bene or was fully admitted by the Court. In order to avoid any question at this time, the

Court will admit this exhibit, which is certain time records of the plaintiff's office.

See Public Laws, January, 1928, Chap. 1161.

The evidence shows that the plaintiff in his office kept a system of diaries and time sheets in order to charge up time against his clients. These documents appear to the Court to be in reasonably good condition. The plaintiff is a man of good standing in his profession. The defendant kept no very accurate time check on the plaintiff. After May, 1928, Miss Egan, one of its employees, did make certain records. By a curious coincidence, this is about the time when, according to the plaintiff's figures, he had expended about 500 hours of his time.

The Court is of the opinion that the most serious question concerns Mr. Wall's own time. The Court sees little reason why his two accountants and his two office girls should purposely make false entries as to time spent on the defendant's work. As a matter of fact, the time charged by the two accountants checks fairly closely with the time figured by Miss Egan, the defendant's employee, when we make an allowance to one of the accountants for time spent in travel. Some of the witnesses for the defense, in regard to the matter of checking up Mr. Wall's time, were obviously interested witnesses, being Mrs. Priest and the members of her family. The Court does not think that the testimony of Mr. Hutchins, an expert called by the defendant, can be conclusive in this matter. He was the employee of a firm which is a competitor of the plaintiff and which succeeded the plaintiff as accountant for the defendant company. Methods of doing business vary and it may well be that one person can do a given piece of work in much less time than another.

In this connection the defendant urged the executive ratio theory. The Court thinks that possibly, speaking generally, some such theory could be applied to a straight and ordinary accounting situation, but under the contract involved here and under the work actually done, the plaintiff did more than mere accounting work, and the Court does not feel that it is reasonable or proper to apply any strict theory of executive ratio to the time spent by Mr. Wall for the defendant.

While an examination of the testimony does show certain discrepancies in the time charged by Mr. Wall, and while it is possibly peculiar that no fractional hours are charged, looking at the situation broadly, the Court is of the opinion that Mr. Wall and the members of his staff endeavored to charge the defendant fairly for time spent, and therefore the Court feels that it should allow such time as charged by the plaintiff and his assistants.

In considering the matter of the defendant's counter claim, the Court has come to the conclusion that it has proved no particular damage or loss suffered by reason of any act of the plaintiff. While possibly there may have been some inconvenience by reason of the retention of certain papers by the plaintiff, the Court does not feel that this matter or any difficulties growing out of the acts of the plaintiff in relation to the accounting or managerial affairs of the defendant entitled it to any recovery under this plea in the nature of a counter claim.

In support of his contention, the plaintiff filed a very voluminous bill of particulars containing many items and covering the time claimed to have been expended on behalf of the defendant. In going over this bill of particulars, it is impossible to refer to it fully in detail. The services rendered, however, have been grouped more or less according to the type of work performed as deduced from the evidence and exhibits, and the Court will con-

sider the matter from that point of view. Applying the findings hereinbefore made from the testimony presented, the Court has come to the following conclusions in connection with the various claims made by the plaintiff.

In arriving at the figures given below, the Court has allowed under the agreement between the parties, $12 an hour for Mr. Wall's time and $6 an hour for the time of the accounting assistants.

As to consultations, apparently Mr. Wall spent approximately 226 hours for which he would appear to be entitled to an allowance of $2,712.

For the audit, the Court allows 26 hours of Mr. Wall's time and 85 hours of his assistants' time, but nothing for the time of the two young women, in accordance with the finding heretofore made that they cannot be considered assistants within the meaning of the contract. This gives the figure of $822 for the audit.

For closing the books after the audit, the testimony would seem to show 32 hours of the assistants' time, or $192.

As to the matter of the Federal Income Tax return, the evidence was very conflicting. Mr. Hutchins, an expert for the defendant, claimed that the work should have been done for $50. Mr. Wall's total claim for his time and that of his staff in this matter was $390. After going over the matter carefully, the Court has come to the conclusion that an allowance of $200 on this item is fair and reasonable. In some ways the same situation applies to the time spent on the State Tax return. Here the plaintiff's charge was $60 and the Court feels that a charge of $50 is proper.

In connection with services in getting out the annual report, for the reasons already indicated the Court is of the opinion that the plaintiff is not entitled to charge the time of the young women in his office at the rate of $6 per hour as assistants. The Court has therefore eliminated this item from the total claim in connection with the annual report and does allow for the time of Mr. Wall and his accountants the sum of $1,056.

In regard to the item of miscellaneous services in connection with the work involving the merger or sale of the plant, the Court makes an allowance of $978 to cover the time spent by Mr. Wall and his accountants, eliminating, as before, the item for the work of the stenographers.

In regard to the Hathaway matter, the Court will make the allowance of $336, which is approximately the plaintiff's claim.

The testimony as to the time expended with Ernst & Ernst, accountants, is quite conflicting. The plaintiff claims he spent 45 hours on this matter. Mr. Hutchins, of the aforesaid firm, claimed only 11½ hours were spent. The plaintiff in his testimony did admit that a good part of this work was mental and that many of the compilations and computations were never fully worked out on paper. Undoubtedly he spent in connection with this item time other than that actually used in talking with said firm of accountants, but the Court does not feel that he is entitled to charge up in full all the time he may have used in thinking about this matter. After giving the item careful consideration, the Court believes that if 20 hours is charged on this item, making a money charge of $240, this would be reasonable under all the circumstances.

The item in relation to special copy work does not seem to come under the contract. It apparently was arranged for through letters passing between the parties in the latter part of February, 1928. On this item it would seem that Mr. Wall himself spent about 10 hours and one of the young women about 218 hours. The Court does not feel that this latter charge should be

at the rate of $6 per hour. There is testimony in the case which would seem to show that a charge of $1.50 is reasonable for this type of work, and the Court will so find. The amount allowed, therefore, by the Court for this copying work is $447.

For the item covering time spent on departmental costs, the Court will find that the plaintiff is entitled to $930, which is approximately his claim, and for the miscellaneous matters $390.

The Court has not allowed the plaintiff for the items covering the monthly services or monthly reports. The reason for this is, as already indicated, that the reports were turned out at late dates and that many of the consultations cover or duplicate the work later produced in the written reports. The Court has allowed in full for the consultations and for the reasons given declines to allow for the monthly reports.

The total of the various items which the Court feels it is proper to allow as above referred to amounts to $8,353. The plaintiff has already been paid $6,000, so the balance remaining is $2.353. The Court feels that this cannot properly be referred to as extra work. It is clear that the contract between the parties contemplated that the plaintiff might have to do more than $6,000 worth of work for the year 1928 and that this sum, payable in monthly installments, was in the nature of a retainer.

In the judgment of the Court, therefore, the plaintiff is entitled to this sum of $2,353 for the further or additional work done by him, together with interest on the same at 6% from the date of the writ, April 9, 1929, to date. This sum for interest amounts to $467.01. The Court therefore finds for the plaintiff in the sum of $2,820.01, the defendant's plea in counter claim having been considered.

For plaintiff: Cooney & Cooney.

For defendant: Huddy & Moulton.